## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **ROBERT DENUZZO,** | : | |
| | : | |
|   **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No. 3:06CV00144(DJS)** |
| | : | |
| **YALE NEW HAVEN HOSPITAL,** | : | |
| | : | |
|   **Defendant.** | : | |

### <u>RULING ON DEFENDANT'S MOTION TO DISMISS</u>

On January 27, 2006, plaintiff Robert DeNuzzo ("DeNuzzo") filed this action against his

former employer, Yale New Haven Hospital ("YNHH") alleging a violation of § 504 of the

Federal Rehabilitation Act of 1973.  Plaintiff also alleges that YNHH committed the tort of

negligent misrepresentation, as defined by Connecticut common law.  On May 4, 2006, pursuant

to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, YNHH filed a motion to

dismiss (dkt. # 14) DeNuzzo's state law claim of negligent misrepresentation.  YNHH also

moved to dismiss the portion of DeNuzzo's prayer for relief that seeks punitive damages.  In

response, DeNuzzo moved for leave to amend his complaint.  For the reasons set forth herein,

defendant's motion **(dkt. # 14)** is **GRANTED in part and DENIED in part and plaintiff's**

**motion for leave to amend is GRANTED.**

### I.  FACTS

The facts are drawn from DeNuzzo's complaint and are accepted as true for the purposes

of ruling on the pending motion to dismiss.  In February 2005, DeNuzzo was offered a job as the

Chief Investigator at Yale New Haven Hospital ("YNHH") by Nicholas Proto ("Proto"), the

hospital's Acting Security Director.  Proto, however, did not have the authority to hire DeNuzzo

until he officially became YNHH's Director of Security.  On February 28, 2005, DeNuzzo resigned from his previous job with the Hartford Insurance Company to accept Proto's offer. Proto told DeNuzzo that if he accepted the job offer, he would have a job for life.  According to DeNuzzo, Proto wrote the job description for the Chief Investigator position to fit DeNuzzo's qualifications.

Prior to being hired, DeNuzzo was diagnosed, in April 2005, with an inoperable, malignant brain tumor.  The treatments DeNuzzo received resulted in some short-term memory loss, and caused DeNuzzo to repeat himself when he spoke.  In August 2005, DeNuzzo's physician approved his return to work.  That same month, Proto became the Director of Security for YNHH.  On September 12, 2005, YNHH hired DeNuzzo as the hospital's Chief Investigator. After DeNuzzo submitted to a physical examination, YNHH's doctor approved him for work. Proto was fully aware of DeNuzzo's medical condition when he hired him.  Proto also knew that DeNuzzo was still taking medication and receiving chemotherapy at the time he started working for YNHH.

DeNuzzo worked as a Chief Investigator for two months before being terminated on November 11, 2005.  Proto believed that DeNuzzo's medical condition, i.e. his short term memory loss, adversely affected his performance.  DeNuzzo did not receive any serious complaints about his work during his time on the job.  In November 2005, Proto told Steven Merz ("Merz"), the Vice President of YNHH, and Lina Perrotti ("Perrotti"), a representative from Human Resources, about DeNuzzo's condition.  After DeNuzzo learned that he was being terminated, he met with Merz, on or about November 17, 2005, to discuss other job opportunities at YNHH.  Merz offered to rehire DeNuzzo as a patrol officer, subject to Proto's approval.

2

To qualify as a patrol officer, DeNuzzo would have to take a written exam and complete eight hours of training.  Proto refused to rehire DeNuzzo without giving him an opportunity to take the exam or complete the training.   DeNuzzo claims that YNHH failed to accommodate his medical disability and unjustly terminated him.

## II. DISCUSSION

DeNuzzo's Complaint contains four counts.  The first four counts state causes of action under Section 504 of the Federal Rehabilitation Act of 1973 and the fourth cause of action states a claim of negligent misrepresentation, as defined by Connecticut law.  Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), YNHH moves to dismiss the Fourth Count of DeNuzzo's Compaint for lack of subject matter jurisdiction.  Alternatively, YNHH asks the court to dismiss the Fourth Count of DeNuzzo's Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  Lastly, YNHH seeks dismissal of DeNuzzo's claim for punitive damages.

### A.  12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure is the appropriate device to assert a "lack of jurisdiction over the subject matter."  Fed. R. Civ. P. 12(b)(1).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  When considering a motion to dismiss under this subsection of Rule 12, the allegations of the complaint are construed in the plaintiff's favor.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  However, once the question of jurisdiction is raised, the burden of establishing subject matter jurisdiction rests on the party asserting such jurisdiction.  See LaFrancis v. United

States, 66 F. Supp. 2d 334, 337 (D. Conn.1999) (citing Thomson v. Gaskill, 315 U.S. 442, 446 (1942)).

In any civil case where a district court has original jurisdiction, it also has supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a); see also Lyndonville Savings Bank & Trust Co. v. Lussier, 211 F.3d 697, 704 (2d Cir. 2000) (observing, "[i]n the absence of diversity jurisdiction, a federal court presented with both federal and state claims may hear the state claims only if they are so closely related to the federal questions as to form part of the same 'case or controversy' under Article III.").  Claims arise under the same "case or controversy" within the meaning of § 1367 and Article III of the Constitution when they "'derive from a common nucleus of operative fact' and are such that one would ordinarily expect them to be tried in one judicial proceeding."  People by Abrams v. Terry, 45 F.3d 17, 23 n.7 (2d Cir. 1995) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)).   Thus, the exercise of supplemental jurisdiction is appropriate where "the facts underlying the federal and state claims substantially overlap[ ] or where the presentation of federal claim necessarily [brings] the facts underlying the state claim before the court."  Lyndonville, 211 F.3d at 704 (internal citations omitted). Conversely, supplemental jurisdiction is lacking where the federal and state claims rest on essentially unrelated facts.  See id. at 704-05.

Even when supplemental jurisdiction is available under § 1367(a), a district court may decline to hear a state law claim if

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the

4

district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  When deciding to exercise supplemental jurisdiction, a federal court should consider and weigh in each case, and at every stage of litigation, the values of judicial economy, convenience, fairness, and comity.  City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 172-73 (1997).

In the instant case, the court has original federal question jurisdiction over DeNuzzo's claims that YNHH violated the Federal Rehabilitation Act.  See 28 U.S.C. § 1331; 29 U.S.C. § 794 et seq.  Thus, the issue before the court is whether the court has supplemental jurisdiction over DeNuzzo's state law claim of negligent misrepresentation.  YNHH argues that the court should dismiss DeNuzzo's state law claim of negligent misrepresentation because, according to YNHH, DeNuzzo's federal claims and his negligent misrepresentation claim do not derive from a common nucleus of operative fact.  The hospital argues that proof of DeNuzzo's federal claims will require a demonstration that he was treated differently from other similarly situated employees because of his disability while proof of his negligent misrepresentation claim will center on what representations were made to DeNuzzo prior to his employment at YNHH.  It is also asserted by YNHH that the damages available under the federal and state claims differ and that DeNuzzo's negligent misrepresentation claim will require proof of damages not relevant to the federal claims.  DeNuzzo counters that both his federal and state claims stem from the same nucleus of operative fact, namely, his termination from YNHH.  According to DeNuzzo, his disability claim alleges that he was terminated because of his disability and his negligent

5

misrepresentation claim alleges that he was terminated despite assurances that he would have a job for life.  He states that the only evidence unique to the negligent misrepresentation claim will be whether Proto promised DeNuzzo that he would have a job for life and whether Proto had the authority to hire DeNuzzo.  According to DeNuzzo, this evidence relates to his federal claims because YNHH will likely introduce evidence regarding its hiring criteria, the authority and roles of its decision-makers, and its reasons for terminating DeNuzzo while defending against DeNuzzo's Federal Rehabilitation Act claims.  DeNuzzo further argues that Proto's promise that DeNuzzo would have a job to life relates to defendant's duty to provide plaintiff with an accommodation under the Federal Rehabilitation Act because had YNHH assigned DeNuzzo to the patrol officer position, DeNuzzo would have remained employed at YNHH and the hospital would have satisfied its duty to provide plaintiff with an accommodation.

The court finds that DeNuzzo's Rehabilitation Act claims and his negligent misrepresentation claim derive from a common nucleus of operative fact because these claims concern the "same conduct" and will require the "same evidence" or "the determination of the same facts"  Luongo v. Nationwide Mut. Ins. Co., No. 95 Civ. 3190 (MBM), 1996 WL 445365, at *4 (S.D.N.Y. Aug. 7, 1996).  In order to establish a prima facie violation of Section 504 of the Rehabilitation Act, DeNuzzo must demonstrate that "(1) he has a disability as defined in the Rehabilitation Act, (2) he is 'otherwise qualified' for the position, (3) he was terminated from such position 'solely by reason of' his or her disability; and (4) the position is part of a program that 'receives federal assistance.'" Alfano v. Bridgeport Airport Services, Inc., 373 F. Supp. 2d 1, 4 (D. Conn. 2005) (quoting Rothschild v. Grottenthaler, 907 F.2d 286, 289-90 (2d.Cir.1990)). With respect to a negligent misrepresentation claim, the Supreme Court of Connecticut has held,

> even an innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth. The governing principles are set forth in similar terms in § 552 of the Restatement Second of Torts (1979): 'One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.'

D'Ulisse-Cupo v. Bd. of Directors of Notre Dame High Sch., 202 Conn. 206, 217-218 (1987) (internal citations omitted).  DeNuzzo's Federal Rehabilitation Act claims as well as his negligent misrepresentation claim concern the conduct of Proto and Proto's influence over DeNuzzo's employment status at YNHH.  Accordingly, they concern the "same conduct." Further, DeNuzzo's offer of proof surrounding the representations Proto made to him before he was hired may relate to his ability to show that he was terminated from his position solely by reason of his disability.  Thus, both claims involve "the determination of the same facts." Further, although the standards for liability and the damages analysis for the Rehabilitation claims will differ from the standards for liability and the damages analysis for the negligent misrepresentation claim, the court finds that the claims still will require many of the same witnesses, much of the same evidence, and determination of many of the same facts.  As such, they derive from a common nucleus of operative fact and satisfy 28 U.S.C. § 1367(a).

Further, to the extent YNHH argues that, pursuant to 28 U.S.C. § 1367(c)(1), the negligent misrepresentation claim should be dismissed because it raises a novel or complex issue of state law, the court disagrees.  The Connecticut Supreme Court "has long recognized liability for negligent misrepresentation."  D'Ulisse-Cupo, 202 Conn. at 217.  In addition, the Superior Court for the State of Connecticut allowed a negligent misrepresentation claim based upon a promise of lifetime employment to survive a motion to strike.  See Buess v. W.T. Systems, Inc.,

No. 27 72 93, 1990 WL 269406, at *1 (Conn.Super., June 29, 1990).  Thus, plaintiff's negligent

misrepresentation claim, which was premised upon a promise of lifetime employment, does not

raise a novel or complex issue of Connecticut law.  As such, the court will not decline to assert

supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(c)(1), over DeNuzzo's state law claim.[1]

Accordingly, to the extent YNHH moves to dismiss DeNuzzo's negligent misrepresentation

claim for lack of subject matter jurisdiction, its motion is denied.

### B.  12(b)(6)

When considering a 12(b)(6) motion to dismiss, the court accepts as true all factual

allegations in the complaint and draws inferences from these allegations in the light most

favorable to the plaintiff.  See Scheuer, 416 U.S. at 236; Bernheim v. Litt, 79 F.3d 318, 321 (2d

Cir. 1996).  Dismissal is warranted only if, under any set of facts that the plaintiff could prove

consistent with the allegations, it is clear that no relief can be granted.  See Hishon v. King &

Spaulding, 467 U.S. 69, 73 (1984); Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998).  "The

issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is

entitled to offer evidence to support his or her claims."  United States v. Yale New Haven Hosp.,

727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 232).  In its review of a

motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents

attached as exhibits or incorporated by reference in the pleadings and matters of which judicial

notice may be taken."  Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

YNHH argues that DeNuzzo's negligent misrepresentation claim should be dismissed for

---

[1]  YNHH does not argue that the court should decline to exercise supplemental
jurisdiction pursuant to 28 U.S.C. § 1367(c)(2), (c)(3) or (c)(4).

two reasons.  First, YNHH contends that a negligent misrepresentation claim based on a promise

of a job for life should not be recognized because a promise of a job for life is not enforceable.

DeNuzzo disputes YNHH's assertion and cites to Buess, 1990 WL 269406, at *1.  The court

finds Buess instructive.  In Buess, the Superior Court of Connecticut denied defendant's motion

to strike a negligent misrepresentation claim premised upon a promise of lifetime employment.

Judge Berdon held,

> The fifth count alleges that the plaintiff was promised lifetime employment and
> that this representation was negligently made. Generally, unless it falls within
> some recognized exception, contracts of permanent employment or for an
> indefinite term are terminable at will. Sheets v. Teddy's Frosted Foods, Inc., 179
> Conn. 471, 474 (1980). Nevertheless, since the allegations must be given on a
> motion to strike the same favorable construction that the court must give in
> admitting evidence; Mingachos v. CBS, Inc., 196 Conn. 91, 108-09 (1985), this
> count survives on a claim of negligent misrepresentation.  D'Ulisse-Cupo v. Board
> of Directors of Notre Dame High School, 202 Conn. 206, 218 (1987).

Buess, 1990 WL 269406, at *1.  Accordingly, to the extent YNHH seeks to dismiss DeNuzzo's

negligent misrepresentation claim because it is premised upon a promise of lifetime employment,

defendant's motion is denied.

YNHH next maintains that DeNuzzo's negligent misrepresentation claim should be

dismissed because DeNuzzo has not alleged that Proto's representation was made for the purpose

of inducing action upon it.  The hospital relies upon J. Frederick Scholes Agency v. Mitchell, 191

Conn. 353 (1983).  In that case, the Connecticut Supreme Court observed, "[A]n actionable

misrepresentation, whether made knowingly, recklessly, negligently, or innocently, must be made

for the purpose of inducing action upon it." Id. at 359.  DeNuzzo's state law claim of negligent

misrepresentation must satisfy the pleading standards set forth in Fed. R. Civ. P. 8.[2]  Rule 8

requires that a plaintiff provide only "a short and plain statement of the claim showing that the

pleader is entitled to relief."  Fed. R. Civ. P. 8(a); see also  Swierkiewicz v. Sorema N.A., 534

U.S. 506, 512 (2002); Conley v. Gibson, 355 U.S. 41, 47 (1957).  Indeed, "[t]here is no

requirement that to survive a Rule 12(b)(6) motion to dismiss a plaintiff must allege in his/her

complaint each specific element of the claim, so long as the elements may reasonably be inferred

from the allegations in the complaint."  Gerrity v. R.J. Reynolds Tobacco Co., 399 F. Supp. 2d

87, 90-91 (D. Conn. 2005).  In the instant case, the allegations in DeNuzzo's complaint infer that

the representations Proto made to DeNuzzo were made for the purpose of inducing action upon

it, i.e., accepting employment at YNHH.  For instance, DeNuzzo alleges that "Proto, Defendant's

Acting Security Director, offered Mr. DeNuzzo a position as the Chief Investigator at YNHH,"

(dkt. # 1, ¶ 8) and "Mr. Proto told Mr. DeNuzzo that, if he accepted a job offer at YNHH, Mr.

DeNuzzo would have a job for life.  Mr. Proto said that he wrote the job description for the Chief

Investigator position at YNHH to fit Mr. DeNuzzo's qualifications," (id., ¶ 12).  These

allegations infer that Proto represented to DeNuzzo that he would have a job for life at YNHH in

order to induce DeNuzzo to accept the job offer.  As such, YNHH's request to dismiss the

negligent misrepresentation claim for failure to state a claim upon which relief can be granted is

denied.

---

[2]  See IM Partners v. Debit Direct Ltd., 394 F. Supp. 2d 503, 521 (D. Conn. 2005)
(finding that Fed. R. Civ. P. 9 and its heightened pleading standards do not apply to claims of
negligent misrepresentation under Connecticut law).

C.  Punitive Damages

YNHH argues that plaintiff's claim for punitive damages must be dismissed for two reasons.  First, with respect to DeNuzzo's Federal Rehabilitation Act claims, YNHH correctly argues that punitive damages may not be awarded on claims brought under Section 504 of the Rehabilitation Act.[3]  Barnes v. Gorman, 536 U.S. 181, 189-90 (2002).  Second, with respect to DeNuzzo's negligent misrepresentation claim, YNHH argues that DeNuzzo is not entitled to punitive damages because "[a]s a general matter, [p]unitive damages, applying the rule in this state as to torts, are awarded when the evidence shows a reckless indifference to the rights of others or an intentional and wanton violation of those rights."  Dunn v. Peter L. Leepson, P.C., 79 Conn. App. 366, 371 (2003) (internal citations omitted), cert denied, 266 Conn. 923 (2003).  A review of the complaint reveals that DeNuzzo has not alleged recklessness on the part of YNHH.  Indeed, DeNuzzo alleged only that the "Defendant failed to exercise competence." (Dkt. # 1.)  Further, the facts, as alleged in the complaint, do not give rise to the inference that YNHH acted recklessly.  Accordingly, YNHH's motion to strike DeNuzzo's claim for punitive damages is GRANTED.[4]

---

[3]  The court observes that plaintiff, in his opposition brief asserts, "Mr. DeNuzzo did not allege in his complaint that he was seeking to recover punitive damages on his Section 504 claims."  (Dkt. # 25-1.)

[4]  YNHH's motion to dismiss the portion of plaintiff's prayer for relief that seeks punitive damages is granted for the additional reason that plaintiff's request for punitive damages is redundant.  In Connecticut, punitive damages are based on a plaintiff's litigation expenses and taxable costs.  See Berry v. Loiseau, 223 Conn. 786, 825-27 (1992).  DeNuzzo, in his opposition brief, acknowledged that punitive damages under Connecticut law are "limited to plaintiff's litigation expenses and costs."  (Dkt. # 25-1.)  Since the prayer for relief in DeNuzzo's complaint also seeks "costs and reasonable attorneys' fees incurred in connection with this action," (see dkt. # 1), the court finds that DeNuzzo's claim for punitive damages is redundant.

D.  Motion to Amend

DeNuzzo, in his opposition brief to defendant's motion to dismiss, moves for leave to amend his complaint to include a claim of reckless indifference.  Pursuant to Rule 15 of the Federal Rules of Civil Procedure,

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Fed. R. Civ. P. 15(a).  The Second Circuit has consistently held that a motion to dismiss under Fed.R.Civ.P. 12(b)(6) is not a "responsive pleading" under Fed.R.Civ.P. 15(a ).  See, e.g., Barbara v. New York Stock Exchange, Inc., 99 F.3d 49, 56 (2d Cir.1996) (citing 6 Wright, Miller & Kane, Federal Practice and Procedure § 1483, at 584-85 (2d ed.1990)); see also  Krasner v. Episcopal Diocese of Long Island, 328 F. Supp. 2d 367, 371 (E.D.N.Y. 2004) ( Rule 15(a) "permits a party to amend their pleading once as a matter of course at any time before a responsive pleading is served" and because a motion to dismiss is not a responsive pleading, "plaintiff's cross-motion for permission to amend the complaint is unnecessary").  YNHH has not as yet filed an answer to the complaint, but rather moved to dismiss DeNuzzo's state law claim. Therefore, DeNuzzo was not required to seek leave of the court to amend his complaint and his motion to amend is granted.

### III.  CONCLUSION

For the foregoing reasons YNHH's motion to dismiss **(dkt. # 14)** is **GRANTED in part and DENIED in part.**  To the extent YNHH seeks dismissal of DeNuzzo's negligent

misrepresentation claim, its request is DENIED.  To the extent YNHH asks the court to dismiss

plaintiff's claim for punitive damages, its request is GRANTED.  In addition, DeNuzzo's motion

for leave to amend his complaint is GRANTED.


So ordered this __19th_____ day of December, 2006.


**/s/DJS**
_____
**DOMINIC J. SQUATRITO**
**UNITED STATES DISTRICT JUDGE**

13